**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**MIGUEL ANGEL ESCALANTE**
  Florence Correctional Center,
  1100 Bowling Rd
  Florence, AZ 85132,

**KENET JEFET HERNANDEZ HERRERA**
  Eloy Detention Center
  1705 E Hanna Rd
  Eloy, AZ 85131,

**ANNA SOROKIN**
  Orange County Correctional Facility
  110 Wells Farm Rd
  Goshen, NY 10924,

**RAMON DOMINGUEZ GONZALEZ**
  Imperial Regional Detention Facility
  1572 Gateway Rd
  Calexico, CA 92231,

On behalf of themselves and others similarly
situated,

       *Plaintiffs*,

    v.

**U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT**,
  500 Twelfth Street SW
  Washington, DC 20536,

**TAE D. JOHNSON**, in his official capacity as
Acting Director of U.S. Immigration and
Customs Enforcement,
  500 Twelfth Street SW
  Washington, DC 20536,

**U.S. DEPARTMENT OF HOMELAND
SECURITY**,
  3801 Nebraska Avenue, NW
  Washington, D.C. 20016,

No. _____

**ALEJANDRO N. MAYORKAS**, in his
official capacity as Secretary of the Department
of Homeland Security,

    2707 Martin Luther King Jr Ave SE
    Washington, D.C. 20528,

        *Defendants*.

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(Failure to provide COVID-19 booster shots to medically vulnerable ICE detainees nationwide)

1

Plaintiffs Miguel Angel Escalante, Kenet Jefet Hernandez Herrera, Anna Sorokin, and Ramon Dominguez Gonzalez (collectively, "Plaintiffs") bring this action on behalf of themselves and others similarly situated against U.S. Immigration and Customs Enforcement, Acting Director Tae D. Johnson, the U.S. Department of Homeland Security, and Secretary Alejandro N. Mayorkas (collectively, "Defendants"), and allege as follows:

## **INTRODUCTION**

1.        Since March 2020, the COVID-19 pandemic has undeniably changed and threatened day-to-day life in the United States, especially among those with certain medical vulnerabilities, as well as those living in jails, prisons, and detention centers. No sooner after the country started to recover from the Delta variant of COVID-19, the Omicron variant surged in its place, leading to a record number of infections, hospitalizations, and deaths nationwide. In the past four weeks alone in the United States, more than 4.4 million people have become infected with COVID-19 and over 61,500 people have died from COVID-19.[1] While the country appears to be emerging from this most recent wave, public health and medical experts continue to warn of waves from future variants, including the recently identified BA.2 Omicron subvariant, which may be more infectious and cause more severe illness.[2]

2.        Yet there is a critical bright spot: the COVID-19 vaccine booster. Multiple studies published by the Centers for Disease Control and Prevention (CDC) confirm that people who receive a messenger RNA (mRNA) COVID-19 booster shot gain significant protection against the

---

[1] Johns Hopkins University Coronavirus Resource Center, *COVID-19 Dashboard*, https://coronavirus.jhu.edu/map.html (last visited Feb. 28, 2022).

[2] Alice Park, *What to Know About BA.2, a New Omicron Variant*, Time (Feb. 22, 2022), https://time.com/6143069/new-omicron-variant-ba2/; Brenda Goodman, *As BA.2 subvariant of Omicron rises, lab studies point to signs of severity*, CNN Health (Feb. 19, 2022), https://www.cnn.com/2022/02/17/health/ba-2-covid-severity/index.html.

virus. The CDC, medical experts, and federal government officials have repeatedly emphasized the importance of COVID-19 vaccine booster shots, encouraging eligible individuals to receive a booster shot as quickly as possible. Recently, the CDC updated its official guidance to correctional and detention facilities, instructing that people living and working in correctional and detention facilities be ensured access to COVID-19 booster shots.[3]

3.      Plaintiffs are medically vulnerable people held by U.S. Immigration and Customs Enforcement (ICE) and the U.S. Department of Homeland Security (DHS) at detention facilities while they await adjudication of their civil immigration cases. As COVID-19 continues to spread in ICE detention facilities, Plaintiffs fear for their health and safety. Since the emergence of the Omicron variant, COVID-19 has surged through ICE detention centers. In January 2022 alone, the number of COVID-19 cases in ICE detention facilities among detainees grew by over 800 percent.[4]

4.      Plaintiffs are eligible for and want to receive an mRNA COVID-19 booster shot, but have not been able to receive one in ICE detention. They have requested booster shots, only to be told that none are available or that they should wait an indeterminate time, or their requests have been simply ignored. In fact, two Plaintiffs contracted COVID-19 shortly after they requested but never received COVID-19 booster shots. They each fell seriously ill and still have not received an mRNA COVID-19 booster shot, even after clearing quarantine.

5.      Despite knowing that ICE detains a large number of people who are medically vulnerable to serious illness and death from COVID-19, and despite knowing that booster shots

---

[3] Centers for Disease Control & Prevention (CDC), *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (updated Feb. 15, 2022).
[4] Camilo Montoya-Galvez, *Government Medical Advisors Urge ICE to Expand COVID-19 Vaccinations for Immigrant Detainees*, CBS News (Jan. 26, 2022), https://www.cbsnews.com/news/immigration-ice-detainees-covid-19-vaccines/.

provide critically important protection against the virus, Defendants have failed to ensure that people in their custody nationwide can receive booster shots in accordance with CDC guidance. As of this date, they have failed to develop any plan to ensure that all eligible people in ICE custody nationwide can obtain COVID-19 booster shots. Defendants have provided no instruction directing the approximately 200 ICE detention facilities nationwide to provide COVID-19 booster shots— let alone mRNA booster shots—to eligible detained people. In addition, Defendants have no plan in place to track or notify all detained people who are eligible for booster shots, nor do they have a plan to provide education for detained people about COVID-19 boosters specifically.

6.      Defendants' failure to provide COVID-19 booster shots in accordance with CDC guidance to eligible individuals in ICE detention nationwide places Plaintiffs and putative class members at an unreasonable risk of serious illness and death and constitutes unlawful punishment of the putative class, which consists of civil immigrant detainees. Defendants' failure to provide such booster shots also violates Section 504 of the Rehabilitation Act, because they have failed to provide appropriate accommodations for the disabilities of Plaintiffs Miguel Angel Escalante, Kenet Jefet Hernandez Herrera, Anna Sorokin, and subclass members.

7.      Without prompt provision of COVID-19 vaccine booster shots, Plaintiffs lack adequate protection against serious illness and death from COVID-19. This Court should order Defendants to immediately make available and provide Plaintiffs and all similarly situated individuals an mRNA COVID-19 vaccine booster shot, by directing all ICE detention facilities to identify people in Defendants' custody who are eligible for a booster shot and provide mRNA booster shots upon their eligibility, along with adequate education, pre-vaccination consultation

and documentation of the booster shot in accordance with CDC guidance.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, specifically the Fifth Amendment to the United States Constitution, the Rehabilitation Act, 29 U.S.C. § 794, and the Administrative Procedure Act, 5 U.S.C. §§ 701–706. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1346 because the United States is a defendant. Defendants have waived sovereign immunity for purposes of this action. 5 U.S.C. §§ 702, 706.

9.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–02, 5 U.S.C. § 706, and the inherent equitable powers of this Court.

10.     Personal jurisdiction and venue are proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are agencies of the United States, or officers of agencies of the United States, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Specifically, Defendants have failed at the headquarters level to direct all ICE detention facilities to ensure that all eligible people in Defendants' custody are able to obtain mRNA COVID-19 booster shots.

## PARTIES

11.     Plaintiff MIGUEL ANGEL ESCALANTE is a 36-year-old man who is presently detained by ICE at the Florence Correctional Center in Florence, Arizona.

12.     Plaintiff KENET JEFET HERNANDEZ HERRERA is a 24-year-old man who is presently detained by ICE at the Eloy Detention Center in Eloy, Arizona.

13.     Plaintiff ANNA SOROKIN is a 31-year-old woman who is presently detained by

ICE at the Orange County Correctional Facility in Goshen, New York.

14.     Plaintiff RAMON DOMINGUEZ GONZALEZ is a 32-year-old man who is presently detained by ICE at the Imperial Regional Detention Facility in Calexico, California.

15.     Defendant U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE) is a federal law enforcement agency within the U.S. Department of Homeland Security. ICE is responsible for the criminal and civil enforcement of immigration laws, including the detention and removal of immigrants. ICE has custody over all Plaintiffs, regardless of the facility in which they are held.

16.     Defendant TAE D. JOHNSON is the Acting Director of ICE. Defendant Johnson is responsible for ICE's policies, practices, and procedures, including those relating to the detention and detention conditions of immigrants. Defendant Johnson is the legal custodian of Plaintiffs. He is sued in his official capacity.

17.     Defendant U.S. DEPARTMENT OF HOMELAND SECURITY (DHS) is a cabinet-level department of the U.S. government. DHS is charged with enforcement of Title 8 of the United States Code under which Plaintiffs are purportedly detained. 8 U.S.C. § 1103(a)(1). Defendant ICE is a component of DHS.

18.     Defendant ALEJANDRO N. MAYORKAS is the Secretary of DHS. In that capacity, he is responsible for the administration of ICE and other DHS subcomponents, including ICE Enforcement and Removal Operations (ERO) and ICE Health Service Corps (IHSC). Defendant Mayorkas is sued in his official capacity.

## FACTS

**A. COVID-19 Vaccine Booster Shots Provide Critical Protection from Serious Illness and Death, Especially in Light of the Omicron and Other Variants.**

19.     COVID-19 continues to pose a significant risk of serious illness and death, with

about 437,938 COVID-19 cases and 11,808 deaths due to COVID-19 nationwide in just the last week (Feb. 21-27, 2022).[5] During the wave caused by the highly infectious Omicron variant, daily COVID-19 case counts and hospitalization rates reached record levels, with hospitalized patients consisting primarily of medically vulnerable, unvaccinated, or un-boosted individuals. As of February 22, 2022, nearly 100 percent of COVID-19 cases in the United States are attributable to the Omicron variant.[6] Although the Omicron variant is sometimes described as causing "mild" illness, that is only in comparison to the Delta variant, and the data now shows that "the death toll attributable to Omicron is about 17 percent higher than the death toll caused by the Delta variant." Declaration of Dr. Eric Feigl-Ding ("Feigl-Ding Decl.") ¶¶ 14, 17. The Omicron variant is still more severe than the original Wuhan strain, *id.* ¶ 17, and those with underlying medical conditions and who are immunocompromised continue to face a substantial risk of serious illness or death from COVID-19. Declaration of Dr. Tara Vijayan ("Vijayan Decl.") ¶ 10. There is also serious risk of complications from long-lasting effects, known as "long COVID," which can result in serious harm to cognitive and other functioning. Feigl-Ding Decl. ¶ 20. Further, there is also concern about future variants, including a new Omicron subvariant called "BA.2," which may be more transmissible than prior strains, and will continue to threaten those who are unvaccinated or with underlying medical conditions. Vijayan Decl. ¶¶ 10, 13; Feigl-Ding Decl. ¶¶ 21–23, 28.

20. The risk of spread of COVID-19 is heightened in congregate settings such as ICE detention facilities, especially as detainees are typically held in these facilities for a significant period of time, often months or years. Vijayan Decl. ¶¶ 14–18; Feigl-Ding Decl. ¶¶ 6, 13. As the

---

[5] CDC, COVID Data Tracker, *United States COVID-19 Cases, Deaths, and Laboratory Testing (NAATs) by State, Territory, and Jurisdiction*, https://covid.cdc.gov/covid-data-tracker/#cases_last7-count (last updated Feb. 28, 2022).
[6] CDC, *COVID Data Tracker, Variant Proportions*, https://covid.cdc.gov/covid-data-tracker/#variant-proportions (last updated Feb. 22, 2022).

CDC has explained, "[p]eople in correctional and detention facilities are at greater risk for some illnesses, such as COVID-19, because of close living arrangements with other people."[7] Between January 3 and January 26, 2022 alone, COVID-19 cases in ICE detention grew by more than 800 percent.[8] According to ICE's own data, as of February 27, 2022 there are 1,001 individuals currently in ICE custody who have tested positive for COVID-19.[9] About a third of all ICE detention facilities nationwide have individuals who are currently under isolation or monitoring for COVID-19 and remain in custody.[10] Over one out of every 20 people in ICE detention are currently infected with COVID-19 today,[11] and there are likely even more COVID-19 positive detainees due to insufficient testing leading to undercounting.[12]

21.     The risk of serious illness or death due to COVID-19 is greatest among those who are unvaccinated and those who are vaccinated but have not received a booster shot. Vijayan Decl. ¶ 20; Feigl-Ding Decl. ¶¶ 29, 32. By October 21, 2021, the CDC had announced that all individuals 18 and older who had received primary doses of the Pfizer-BioNTech or Moderna vaccines at least six months ago and live in high-risk settings, which include immigration detention facilities, and all individuals 18 and older who received the Johnson & Johnson ("J&J" or "Janssen") vaccine at

---

[7] CDC, COVID-19, *FAQs for Correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html (last updated Jan. 26, 2021).
[8] Montoya-Galvez, *Government Medical Advisors Urge ICE to Expand COVID-19 Vaccinations for Immigrant Detainees*, *supra* note 4.
[9] U.S. Immigration & Customs Enforcement (ICE), *ICE Guidance on COVID-19: ICE Detainee Statistics*, https://www.ice.gov/coronavirus#detStat (last updated Feb. 28, 2022).
[10] *Id.*
[11] *Id.* (noting that 1,001 of 18,203 people in ICE detention, or approximately 5.5 percent, have currently tested positive for COVID-19).
[12] *See* Office of the Inspector General, *ICE's Management of COVID-19 in Its Detention Facilities Provides Lessons Learned for Future Pandemic Responses*, OIG-21-58 (Sept. 7, 2021), 25–26, https://www.oig.dhs.gov/sites/default/files/assets/2021-09/OIG-21-58-Sep21.pdf.

least two months ago, may receive a booster shot for additional protection against COVID-19.[13] Since then, it has become abundantly clear that booster shots are critical to keeping people safe from the worst health risks caused by COVID-19. Recent data published by the CDC confirms that with the rise of the Omicron variant, the Messenger RNA (mRNA) vaccine booster shots, Pfizer-BioNTech and Moderna, are *90 percent* effective against hospitalization, compared to only *57 percent* effectivity against hospitalization 180 days after receiving the second primary dose of an mRNA vaccine. Vijayan Decl. ¶ 21. Moreover, the Johnson & Johnson vaccine has been found to provide insufficient quantities of antibodies against Omicron. *Id.* As a result, it is well established that the primary doses of the COVID-19 vaccines alone, absent an mRNA booster shot, fail to offer adequate protection once the initial protection they provide wanes. *Id.*

22.     The mRNA vaccine booster shots are the established medical standard of care. *Id.* ¶ 24. It falls below the professional standard of care for Defendants to offer only the Johnson & Johnson booster shot to a detainee. Feigl-Ding Decl. ¶¶ 25, 30; Vijayan Decl. ¶¶ 23–24. DHS's own experts have specifically called for the provision of mRNA booster shots to detainees,[14] as have medical faculty nationwide.[15] Several studies have confirmed that the mRNA vaccine booster shots are more effective in preventing serious illness and death from COVID-19 and are less likely

---

[13] Press Release, CDC, *CDC Expands Eligibility for COVID-19 Booster Shots* (Oct. 21, 2021), https://www.cdc.gov/media/releases/2021/p1021-covid-booster.html. As explained below, the CDC announced eligibility for boosters for those who had received primary Pfizer doses and are of advanced age or have certain medical vulnerabilities as early as September 24, 2021. *See infra* ¶ 49.

[14] Letter from Scott A. Allen, MD, and Josiah D. Rich, MD, to Alejandro Mayorkas, Sec'y, DHS, and Tae Johnson, ICE, Acting Dir. (Jan. 26, 2022), https://whistleblower.org/wp-content/uploads/2022/01/012622-LETTER-TO-MAYORKAS-FROM-DRS-RE-COVID-IN-IMM-DETENTION.pdf.

[15] Letter from Concerned Medical Faculty to Alejandro Mayorkas, Sec'y, DHS, and Tae Johnson, ICE, Acting Dir. (Jan. 27, 2022), https://phr.org/our-work/resources/open-letter-on-covid-19-boosters-in-ice-detention/.

to cause side effects such as blood clots in comparison to the viral vector Johnson & Johnson vaccine.[16] *See* Vijayan Decl. ¶¶ 21–24; Feigl-Ding Decl. ¶ 30. As a result, the CDC has explained that "Pfizer-BioNTech or Moderna (COVID-19 mRNA vaccines) are preferred" for booster shots and the Johnson & Johnson vaccine should only be given as a booster shot in rare circumstances, such as if someone "[h]ad a severe reaction after an mRNA vaccine dose" or "ha[s] a severe allergy to an ingredient of Pfizer-BioNTech or Moderna," if they "[w]ould otherwise remain unvaccinated for COVID-19 due to limited access to Pfizer-BioNTech or Moderna," or "[w]ants to get the J&J/Janssen COVID-19 vaccine despite the safety concerns."[17] Moreover, the CDC instructs that prior to vaccination, patients "should be informed that mRNA vaccines are preferred over the Janssen COVID-19 Vaccine" and that "[a]ll people who elect to receive a Janssen COVID-19 Vaccine booster should be informed about the risk and symptoms of TTS [(thrombosis with thrombocytopenia syndrome—a blood clotting disease)] that could occur after vaccination . . . and the availability of mRNA COVID-19 vaccines instead of the Janssen COVID-19 Vaccine."[18]

23.     In other words, the CDC's guidance makes clear that the mRNA booster shot is preferred and should be made available, except in a rare and limited set of circumstances like when the mRNA vaccine is medically contraindicated.[19] Moreover, CDC guidance explicitly

---

[16] CDC, *Selected Adverse Events Reported after COVID-19 Vaccination*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/adverse-events.html (updated Feb. 25, 2022).

[17] CDC, *COVID-19 Vaccine Booster Shots*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html (updated Feb. 2, 2022); CDC, *Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html (updated Jan. 22, 2022).

[18] CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States*, https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html#considerations-covid19-vax-booster (last visited Feb. 28, 2022).

[19] CDC, *Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety*, *supra* note 17.

recommends mRNA vaccines for people who are moderately or severely immunocompromised, and has even authorized *second* mRNA booster doses for those who originally received a Johnson & Johnson vaccine.[20]

24.     The mRNA vaccine booster shots are widely available. Indeed, the CDC took into consideration the supply of mRNA vaccines when issuing its recommendation for COVID-19 booster shots in December 2021, noting that "the U.S. supply of mRNA vaccines is abundant – with nearly 100 million doses in the field for immediate use."[21] Vijayan Decl. ¶ 25; Feigl-Ding Decl. ¶ 25.

25.     The federal government has repeatedly emphasized the importance of the COVID-19 vaccine booster shots. The White House issued a statement on December 2, 2021, that "[a]s we face the Omicron variant, boosters are more important than ever. Boosters increase the strength of your antibody response, so when the virus mutates, a booster makes it more likely that your antibodies can protect you against the new variant."[22] The federal government has accordingly prioritized access to COVID-19 vaccines and booster shots for people nationwide as a necessary measure to protect people's health. Defendants' failure to provide COVID-19 booster shots to Plaintiffs therefore risks Plaintiffs' health and lives in defiance of medical, public health, and

---

[20] CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States*, *supra* note 18.

[21] Press Release, CDC, *CDC Endorses ACIP's Updated COVID-19 Vaccine Recommendations* (Dec. 16, 2021), https://www.cdc.gov/media/releases/2021/s1216-covid-19-vaccines.html.

[22] Press Release, The White House, *President Biden Announces New Actions to Protect Americans Against the Delta and Omicron Variants as We Battle COVID-19 this Winter* (Dec. 2, 2021), https://bit.ly/32EYm16; *see also* Press Release, CDC, *CDC Expands Eligibility for COVID-19 Booster Shots*, *supra* note 13 (CDC Director Dr. Rochelle Walensky: "The recent emergence of the Omicron variant (B.1.1.529) further emphasizes the importance of vaccination, boosters, and prevention efforts needed to protect against COVID-19."); CBS News, *Dr. Anthony Fauci on the Threat from Omicron: "If You Want to Be Fully Protected, Get Boosted"* (Dec. 30, 2021), https://www.cbsnews.com/news/anthony-fauci-covid-vaccine-booster-omicron/ ("Fauci said Thursday in an interview on CBSN. 'If you are not boosted, get boosted.'").

government authorities.

**B. Without an mRNA Booster Shot, Plaintiffs and Putative Class Members, Who Are Medically Vulnerable, Face an Unreasonable Risk of Serious Illness and Death from COVID-19.**

26.     Plaintiffs and putative class members are all medically vulnerable to COVID-19 and face an unreasonable risk of serious illness and death from COVID-19 without the critical protection of a booster shot.

27.     The CDC has identified several medical conditions which place individuals at a high risk for serious illness and death from COVID-19. These conditions include: lung disease, heart disease, heart conditions, hypertension, chronic kidney disease, chronic liver disease, moderate to severe asthma, diabetes, being overweight or obese, blood disorders, compromised immune systems, developmental disabilities, mood disorders including depression and schizophrenia spectrum disorders, and others.[23] According to the CDC, individuals with these medical conditions "are more likely to get very sick from COVID-19."[24] "This means that a person with one or more of these conditions who gets very sick from COVID-19 (has severe illness from COVID-19) is more like to: [b]e hospitalized, [n]eed intensive care, [r]equire a ventilator to help them breathe, [or] [d]ie."[25] *See* Vijayan Decl. ¶¶ 6–7.

28.     Plaintiff Miguel Angel Escalante has been detained by ICE at the Florence Correctional Center ("Florence") in Florence, Arizona since approximately January 3, 2022. He has been in ICE custody since July 2020 in various different facilities in Arizona. Mr. Escalante is HIV-positive and has a weakened immune system, which makes him vulnerable to serious illness

---

[23] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 25, 2022).
[24] *Id.*
[25] *Id.*

or death from COVID-19. He is an otherwise qualified person with a disability under the Rehabilitation Act. ICE is aware of his medical conditions because he has filed five requests for release, including under *Fraihat v. U.S. Immigration & Customs Enforcement*, which requires ICE to "make timely custody determinations for" medically vulnerable detainees like Plaintiffs. 445 F. Supp. 3d 709, 751 (C.D. Cal. 2020), *overruled by* 16 F. 4th 613 (9th Cir. 2021).[26] His most recent denial was on January 11, 2022. Mr. Escalante received one dose of the Johnson & Johnson vaccine around May 20, 2021 while in ICE custody at La Palma Correctional Center.

29.     Mr. Escalante has made repeated requests for a booster shot. First, in November 2021, he asked the nurse staff at La Palma Correctional Center for a booster, but they informed him that they did not have them at that time. After Mr. Escalante was transferred to Florence, he requested a booster shot from a nurse at intake. Again, he was told that they were not available. Mr. Escalante subsequently requested the booster shot two more times, after which a nurse informed him that he would be placed on a waiting list. Mr. Escalante has been on this waiting list for about a month, and has yet to receive a COVID-19 booster. He also does not know any other detainee at Florence who has received a booster shot. Mr. Escalante is extremely worried about contracting COVID-19 because of his HIV status and the frequent number of people moving through the facility. In particular, he wants to receive an mRNA vaccine for more protection.

30.     Plaintiff Kenet Jefet Hernandez Herrera has been detained by ICE at the Eloy Detention Center ("Eloy") in Eloy, Arizona since approximately June 2021. Mr. Hernandez Herrera has several conditions that make him vulnerable to serious illness or death from COVID-19, including post-traumatic stress disorder, anxiety disorder, and mild neurocognitive disorder.

---

[26] The *Fraihat* district court orders remain in effect because the Ninth Circuit Court of Appeals' mandate has not issued. *See Fraihat v. United States Immigration & Customs Enf't*, Docket No. 20-55634 (9th Cir.).

He is also a former smoker. Mr. Hernandez Herrera is an otherwise qualified person with a disability under the Rehabilitation Act. ICE is aware of his medical conditions because he was diagnosed with and prescribed medication for his anxiety disorder at Eloy. He was not vaccinated for COVID-19 until around July 14, 2021, when he received one dose of the Johnson & Johnson vaccine after multiple requests.

31.     Since then, Mr. Hernandez Herrera has requested the COVID-19 booster shot at least twice while at Eloy. He first submitted a request in writing in early to mid-January 2022, but he never received a response. Later in January, he requested a booster shot while speaking with medical staff, but he was told that they were not available. He also does not know any other detainees at Eloy who have received a COVID-19 booster shot. Mr. Hernandez Herrera has already been sick with COVID-19 once before, in June 2021, when he had serious symptoms including difficulty breathing, a high fever, and extended cough. He therefore wants a booster shot in order to protect himself from becoming seriously ill from COVID-19 in the future. He fears that he is already in danger at Eloy, where the guards have mixed healthy people with those who are infected with COVID-19 in the same units.

32.     Plaintiff Anna Sorokin has been detained by ICE at the Orange County Correctional Facility ("Orange County") in Goshen, New York since June 7, 2021. She was also detained by ICE at the Bergen County Correctional Facility since approximately March 25, 2021. She has several medical conditions that make her vulnerable to serious illness or death from COVID-19, including a chronic kidney infection as well as depression, anxiety, and post-traumatic stress disorder. She is an otherwise qualified person with a disability under the Rehabilitation Act. ICE is aware of her medical conditions because she had been considered but denied release under *Fraihat* around April 1, 2021, and she has recently submitted two new *Fraihat* requests in February

14

2022, including information about her kidney condition. She was vaccinated for COVID-19 around April 2021, when she received one dose of the Johnson & Johnson vaccine while detained by ICE at the Bergen County Correctional Facility.

33.     Ms. Sorokin has made multiple requests for a booster shot. First, she submitted a sick call slip in December 2021, stating that she wanted a booster. She never received a response. Then around January 19, 2022, she tested positive for COVID-19, during which she had a fever, persistent cough, nausea, migraines, and body aches. Even after she left quarantine on January 29, 2022, she continued to experience lingering effects including fatigue, coughing, brain fog and shortness of breath.

34.     After leaving quarantine on January 29, 2022, Ms. Sorokin requested the booster again when she had a medical visit for a general check-up. Although a nurse told her that she would be seen by a doctor to address this, she never heard anything about a booster shot since then. She has not heard of any other detained people getting a booster shot in Orange County, and has not seen any information distributed about boosters. She feels especially frustrated that she contracted COVID-19 after Orange County failed to give her a booster shot upon her initial request, and she feels that the staff have left her and other detainees unprotected in the facility. Ms. Sorokin would like a booster shot as soon as she is medically eligible, as she is concerned about getting sick from COVID-19 if she contracts it again.

35.     Plaintiff Ramon Dominguez Gonzalez has been detained by ICE at the Imperial Regional Adult Detention Facility ("Imperial") in Calexico, California since approximately January 2019. Mr. Dominguez Gonzalez is clinically obese and has difficulty breathing. ICE is aware of his medical vulnerability to COVID-19 because in October 2020, Mr. Dominguez Gonzalez filed a request for release on the basis of his medical conditions under *Fraihat*. He

received a single dose of the Johnson & Johnson vaccine around March 2021, meeting the required two-month wait period to be eligible for a booster shot.

36.     Mr. Dominguez Gonzalez has made multiple requests for a booster shot at Imperial, yet has been unable to receive one. Initially, after submitting a request through a sick call slip in early December 2021, he was told by a nurse that they would get back to him, but they never did. Later in the month, he requested the booster shot again at a mental health appointment, but he never received one. Mr. Dominguez Gonzalez then submitted another sick call request inquiring about the booster around January 8, 2022, but no one explained to him why he had not yet received a booster. Shortly after, on January 17, 2022, Mr. Dominguez Gonzalez tested positive for COVID-19. Earlier in February 2022, as many as nine out of 12 housing units in Imperial were under quarantine for COVID-19 exposure. Mr. Dominguez Gonzalez fell ill, including suffering a fever, cough, and shortness of breath.

37.     Mr. Dominguez Gonzalez continued to test positive for COVID-19 until January 27, 2022, when he was released from quarantine. Although he became eligible for the booster, he was not offered a booster at Imperial until February 23, 2022, and his only option was the Johnson & Johnson booster. Mr. Dominguez Gonzalez declined the Johnson & Johnson booster based on his understanding of CDC and medical expert recommendation for mRNA boosters. Mr. Dominguez Gonzalez still wants an mRNA booster shot to get protection and prevent himself from getting sick from COVID-19 again. He still has breathing issues, and has no confidence in the staff at Imperial, as he has seen them eschew COVID-19 protocols, like going to work while still sick.

38.     Plaintiffs all have a serious medical need for an mRNA COVID-19 booster shot given their medical vulnerabilities and the heightened risk they will get COVID-19 while they are in detention. Without receiving a booster shot, Plaintiffs have a greater chance of becoming

seriously ill or even dying from COVID-19 because of Defendants' failure to promptly provide boosters.

39.     Plaintiffs have not received any education or pre-vaccination counseling regarding booster shots at their facilities. As DHS's own medical experts, Dr. Scott Allen and Dr. Josiah Rich, have emphasized, COVID-19 vaccine provision "must be accompanied by an effective education and counseling effort to allow for informed consent and to overcome misinformation and confusion regarding the safety and efficacy of vaccinations."[27] The CDC also requires that individuals must be given proper documentation of their vaccinations and booster doses,[28] a logical and practical necessity to ensure continuity of adequate medical care.

40.     If Plaintiffs become seriously ill from COVID-19, they will not be able to participate in their removal proceedings as they will not be able to go to court, testify before an immigration judge, and submit applications for relief.

## C. Defendants Are Responsible for the Medical Care and Safety of People in Their Custody, Such as Plaintiffs.

41.     ICE Enforcement and Removal Operations (ERO) is the component of ICE responsible for apprehending and deporting noncitizens. ERO is responsible for overseeing conditions of confinement across all detention facilities where ICE detainees are held.

42.     ERO also publishes ICE's COVID-19 Pandemic Response Requirements (PRR), which includes performance standards "defin[ing] the 'minimum acceptable detention conditions for detainees with [medical] risk factors,'" and "sets forth expectations" for the management of

---

[27] Letter from Dr. Scott Allen and Dr. Josiah Rich, *supra* note 14; *see also* CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States*, *supra* note 18, at 6 (detailing required pre-vaccination counseling).
[28] CDC, *COVID-19 Vaccine FAQs for Healthcare Professionals: Vaccination Documentation*, https://www.cdc.gov/vaccines/covid-19/hcp/faq.html#vaccination-documentation (last visited Feb. 28, 2022).

COVID-19 at all detention facilities nationwide.[29] ERO ensures that detention facilities comply with the requirements set forth in the PRR by conducting monthly in-person visits at each detention facility. The PRR is intended for use across ICE's "entire detention network, applying to all facilities housing ICE detainees."[30]

43.     ERO has also established standards that more broadly govern medical care and other conditions of confinement at detention facilities.

44.     ICE Health Service Corps (IHSC) is a component of ICE that is responsible for overseeing health care at all immigration detention facilities in the country, and directly provides medical services at approximately 20 detention facilities.

45.     ICE is also responsible for ensuring that detainees in its custody nationwide receive reasonable disability accommodations and do not suffer discrimination based on disability.

**D.  Defendants Have No Plan to Provide COVID-19 Vaccine Booster Shots to All People in ICE Custody.**

46.     Defendants have no plan to ensure that all medically vulnerable people in their custody nationwide can obtain COVID-19 booster shots.

47.     ICE's most recent PRR, version 7.0, makes no mention whatsoever about the provision of COVID-19 vaccine booster shots to detainees.[31] ICE issued version 7.0 of the PRR on October 19, 2021.

48.     Likewise, IHSC's COVID-19 Vaccination Guidelines and Protocol, meant to standardize immunization administration practices for individuals detained in IHSC-staff detention facilities, also makes no mention regarding the provision of COVID-19 vaccine booster

---

[29] ICE, *ICE ERO Covid-19 Pandemic Response Requirements*, 6, 6 n.1 (Oct. 19, 2021), https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf.
[30] *Id.* at 9.
[31] *Id.*

shots.[32] This operations memorandum was issued January 25, 2021 and, upon information and belief, has yet to be updated to include booster shots.

49.    However, as early as September 24, 2021, the CDC recommended that people 65 and older as well as people ages 50-64 with underlying medical conditions receive a booster shot six or more months after they received a primary series of the Pfizer-BioNTech vaccine.[33] At that time, the CDC also permitted people ages 18-49 with underlying medical conditions and people ages 18-64 who are at increased risk for COVID-19 due to their residence in an institutional setting to receive a booster shot six or more months after they received a primary series of the Pfizer-BioNTech vaccine.[34] On October 21, 2021, the CDC went further and recommended COVID-19 booster shots to all people who received the Johnson & Johnson vaccine two or more months ago, and to all people ages 18 or older who received either the Pfizer-BioNTech or Moderna vaccine six or more months ago and reside in high-risk settings, which include detention centers.[35]

50.    Thus, all qualifying adults in ICE custody have been eligible for a booster for over four months. Yet Defendants have not updated the PRR or any other COVID-19 guidance with any information regarding booster shots, or issued any plans instructing ICE detention facilities nationwide to provide booster shots, education or pre-vaccination consultation regarding booster shots.

51.    Defendants' failure to implement a nationwide plan to provide COVID-19 vaccine booster shots to all eligible people in their custody is evident from the paltry number of booster

---

[32] IHSC, Assistant Director Stewart D. Smith, *COVID-19 Vaccination Guidelines and Protocol Operations Memorandum*, MO: 21-001 (effective date Jan. 25, 2021).
[33] CDC, *CDC Statement on ACIP Booster Recommendations* (Sept. 24, 2021), https://www.cdc.gov/media/releases/2021/p0924-booster-recommendations-.html.
[34] *Id.*
[35] CDC, *CDC Expands Eligibility for COVID-19 Booster Shots*, *supra* note 13.

shots they have administered to people in ICE detention facilities so far. Over four months, between November 2021 and February 21, 2022, Defendants have provided only a total of 1,436 boosters to people detained in ICE detention facilities, despite holding between approximately 18,000 to 22,000 people on a day-to-day average.[36] In comparison, as discussed in detail below, *infra* ¶ 62, other custodial entities have vaccinated many thousands of individuals in their custody. For example, the Michigan Department of Corrections has fully vaccinated *and* provided booster shots to 35 percent of people in its custody.[37]

52.     Moreover, ICE has failed to adopt a plan regarding booster shots even though its own detention standards for certain facilities instruct that "Centers for Disease Control and Prevention (CDC) guidelines for the prevention and control of infectious and communicable diseases *shall be followed*" at the applicable detention facilities.[38]  Those CDC guidelines clearly instruct detention facilities to provide access to COVID-19 vaccines and booster shots "at all times" to staff members and detainees.[39]

53.     Defendants should be, and are, aware of the danger posed by COVID-19 to

---

[36] Declaration of Dr. Ada Rivera, *Shaikh v. U.S. Immigr. & Customs Enf't*, No. 1:22-cv-00231, ¶ 31 (D.D.C. Feb. 24, 2022), ECF No. 22-6; Camilo Montoya-Galvez, *Coronavirus Infections inside U.S. Immigration Detention Centers Surge by 520% in 2022*, CBS News (Jan. 14, 2022), https://www.cbsnews.com/news/immigration-detention-covid-cases-surge/ (noting daily average of 22,000 detainees in custody); ICE, *ICE Guidance on COVID-19: ICE Detainee Statistics* https://web.archive.org/web/20220222183148/https://www.ice.gov/coronavirus (updated Feb. 22, 2022) (noting daily average of 18,800 detainees in custody as of February 21, 2022).
[37] Michigan.gov, *COVID-19 Dashboard*, https://www.michigan.gov/coronavirus/0,9753,7-406-98178_103214-547150--,00.html (last updated Feb. 25, 2022) (showing that 11,398 booster shots had been administered, out of 32,273 in the total population).
[38] ICE, Performance-Based National Detention Standards 2011, Standard 4.3.II.10 (rev. Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/4-3.pdf (emphasis added).
[39] CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, *supra* note 3.

individuals in its care, and of the critical importance of boosters.

54.    On December 15, 2021, the American Civil Liberties Union (ACLU) sent a letter to DHS Secretary Alejandro Mayorkas and ICE Acting Director Tae Johnson urging them to "take immediate action to address" the agency's failure to adopt and implement a booster shot plan "before further harm is done to the people in ICE custody and the community at large."[40]

55.    On January 26, 2022, Dr. Scott Allen and Dr. Josiah Rich, who serve as medical experts for DHS, sent a letter to Secretary Mayorkas and Acting Director Johnson, warning of the urgent need for ICE to provide COVID-19 vaccination and boosters to detainees.[41]

56.    Recently, five medically vulnerable detained immigrants sued Defendants ICE and DHS over the failure to provide them with COVID-19 booster shots, directly prompting ICE to administer boosters to those five individuals. *See Shaikh v. U.S. Immigr. & Customs Enf't*, No. 1:22-cv-00231 (D.D.C. Feb. 24, 2022), ECF No. 23.

57.    Defendants' failure to ensure that people in its custody receive COVID-19 vaccine booster shots carries particularly severe consequences for the significant number of persons in ICE custody who, like Plaintiffs, are medically vulnerable to COVID-19. According to a recent news report, as of late December 2021, ICE detained 5,200 immigrants whose health issues or age placed them at higher risk of becoming severely ill or dying if they contracted COVID-19.[42] Under the terms of a preliminary injunction that remains in effect, ICE is required to consider releasing these

---

[40] Letter from Eunice Cho and Michael Tan, ACLU, to Alejandro Mayorkas, Sec'y, DHS, and Tae Johnson, Acting Dir., ICE (Dec. 15, 2021), https://www.aclu.org/letter/letter-demanding-dhs-provide-covid-19-vaccine-boosters-people-ice-detention.

[41] Letter from Dr. Scott Allen and Dr. Josiah Rich, *supra* note 14.

[42] Camilo Montoya-Galvez, *Coronavirus Infections inside U.S. Immigration Detention Centers Surge by 520% in 2022*, *supra* note 36.

individuals from detention.[43] Nevertheless, these and other individuals continue to languish in ICE custody without receiving the basic and necessary protection of a COVID-19 booster shot.

58.     Compounding the danger of Defendants' failure to adopt a nationwide booster shot plan is ICE's heavy reliance for people in its custody on the Johnson & Johnson vaccine,[44] which has proven far less effective against COVID-19 variants. Vijayan Decl. ¶¶ 21–24; Feigl-Ding Decl. ¶¶ 25, 30. Each Plaintiff has received only one dose of the Johnson & Johnson vaccine. The CDC's formal recommendation of mRNA COVID-19 vaccines and boosters over Johnson & Johnson's followed a "robust discussion of the latest evidence on vaccine effectiveness, vaccine safety and rare adverse events, and consideration of the . . . abundant" supply of mRNA vaccine consisting of "nearly 100 million doses in the field for immediate use."[45]  In fact, as stated above, due to efficacy concerns, the CDC has even authorized *second* mRNA booster doses for those who originally received a Johnson & Johnson vaccine.[46] ICE officials have themselves acknowledged the clinical preference for mRNA vaccines, and ICE has offered mRNA booster shots in some, but not all facilities, and has stated that the agency is working to expand access to mRNA vaccines.[47] Despite the widespread availability of mRNA vaccines, however, they are available only in a limited number of ICE detention facilities.

59.     Defendants' sluggish roll-out of COVID-19 primary vaccines in 2021 does not

---

[43] *See Fraihat v. ICE*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *overruled by Fraihat v. ICE*, 16 F.4th 613 (9th Cir. 2021); *see also supra* note 26.

[44] Priscilla Alvarez, *DHS Begins Administering J&J vaccine to Immigrant Detainees*, CNN Politics (July 13, 2021), https://www.cnn.com/2021/07/13/politics/immigrant-detainees-vaccine-dhs/index.html.

[45] Press Release, CDC, *CDC Endorses ACIP's Updated COVID-19 Vaccine Recommendations*, *supra* note 21.

[46] CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States*, *supra* note 18.

[47] Declaration of Dr. Ada Rivera, ¶¶ 8, 9, 16, *supra* note 36.

bode well for people like Plaintiffs who are relying on Defendants to promptly provide them booster shots. Internal agency emails illustrate Defendants' failure to quickly formulate, communicate, and implement a clear plan for detention facilities after COVID-19 vaccines became available.   Shortly after the Food and Drug Administration (FDA) issued emergency use authorization for COVID-19 vaccines, and as early as January 25, 2021, ICE ERO staff suggested that the agency add COVID-19 vaccine guidelines and protocols to the next version of the PRR to ensure "across the board implementation."[48] As an ICE official stated in an email, "[u]ltimately we should have a consistent, comprehensive rollout for all 200+ facilities within our detention network [as] opposed to only IHSC staffed facilities."[49] This email suggested producing what ultimately became ICE PRR version 6.0, but that document was not released until nearly *two months later*, on March 16, 2021.[50]

60.     The ICE PRR 6.0 did not, however, establish any "consistent" or "comprehensive" rollout of vaccines, and failed to provide any support at all to detention facilities with respect to the procurement or administration of vaccine.[51] Instead, it left vaccine rollout up to each facility, stating, "[d]etention facility staff should contact their state's COVID-19 vaccine resource (i.e., state or county department of health) to obtain vaccine."[52] Defendants' failure to procure and supply vaccine doses to detention facilities and the lack of more detailed guidance spurred widespread confusion, and many detention facilities nationwide did not provide COVID-19 vaccines to detainees for several more months, requiring a district court to order vaccines for high-

---

[48] E-mail from Ricardo Wong, Dep. Asst. Dir., Detention Management Division, to Ada Rivera, Dep. Asst. Dir. Clinical Services, ICE Health Services Corps (Jan. 25, 2021, 2:47 PM).
[49] *Id*.
[50] *See* ICE, *ICE ERO Covid-19 Pandemic Response Requirements* (Mar. 16, 2021).
[51] *Id*. at 24.
[52] *Id*.

risk individuals.[53] It was not until October 19, 2021, in ICE PRR version 7.0, that ICE finally offered vaccine procurement assistance to detention facilities—and only with J&J vaccines—roughly ten months after the first vaccine became available,[54] and five months after half of all adults in the United States had already received at least one shot.[55] As of today, however, the ICE PRR remains silent on booster shots; the term "booster" appears nowhere in the text of the PRR.[56]

61.     Between December 11, 2020, the date the first Emergency Use Authorization was issued by the FDA to a COVID-19 vaccine, and October 19, 2021, the date ICE finally offered to supply detention facilities with vaccine doses, at least two noncitizens died in ICE custody from complications due to COVID-19.[57] This figure does not include hospitalization numbers (which are not publicly reported by ICE) or hospitalized individuals released by ICE immediately prior to

---

[53] *Fraihat v. U.S. Immigr. & Customs*, No. EDCV191546JGBSHKX, 2021 WL 2580512 (C.D. Cal. June 23, 2021); *see, e.g.*, Caroline Simon, *National Vaccination Effort Leaves ICE Detainees Behind*, Roll Call (May 14, 2021), https://www.rollcall.com/2021/05/14/national-vaccination-effort-leaves-ice-detainees-behind/; Maria Sacchetti, *ICE Has No Clear Plan for Vaccinating Thousands of Detained Immigrants Fighting Deportation*, Wash. Post (Mar. 12, 2021), https://www.washingtonpost.com/immigration/ice-detainees-covid-vaccine/2021/03/12/0936ee18-81f5-11eb-81db-b02f0398f49a_story.html; Noah Lanard, *"You're Doing Nothing": Judge Slams ICE for Failing to Vaccinate Detainees*, Mother Jones (Mar. 4, 2021), https://www.motherjones.com/politics/2021/03/youre-doing-nothing-judge-slams-ice-for-failing-to-vaccinate-detainees/.

[54] ICE, *ICE ERO Covid-19 Pandemic Response Requirements* at 25, *supra* note 29 ("sites may request that ICE ship a COVID-19 vaccine directly to the facility by sending an email request to vaccinerequest@ice.dhs.gov."); Press Release, FDA, *FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine* (Dec. 11, 2020), https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19.

[55] Emily Anthes, Madeleine Ngo & Eileen Sullivan, *Adults in All U.S. States Are Now Eligible for Vaccination, Hitting Biden's Target. Half Have Had at Least One Dose*, N.Y. Times (Apr. 19, 2021), https://www.nytimes.com/2021/04/19/world/adults-eligible-covid-vaccine.html.

[56] ICE, *ICE ERO Covid-19 Pandemic Response Requirements*, *supra* note 29.

[57] ICE, *Detainee Death Report – Montes, Felipe*, 2 https://www.ice.gov/doclib/foia/reports/ddrMontesFelipe.pdf (last visited Jan. 28, 2022); ICE, Press Release, *Venezuelan Man in ICE Custody Passes away in Mississippi Hospital* (Oct. 4, 2021); https://www.ice.gov/news/releases/venezuelan-man-ice-custody-passes-away-mississippi-hospital.

dying from COVID-19.[58]

62.    ICE's delay in developing and implementing a booster shot plan stands in contrast to other custodial entities, including the Federal Bureau of Prisons (BOP) and state departments of correction. The BOP COVID-19 Vaccine Guidance, Version 14.1, issued on October 13, 2021 provides that the BOP should offer the Pfizer-BioNTech COVID-19 booster shot to individuals who were then eligible for it under CDC guidance.[59] The District of Columbia's Department of Corrections announced on December 22, 2021 that it "continues to offer a COVID-19 vaccine to all residents and is offering the booster to all residents who are eligible."[60] Multiple states have administered many thousands of booster shots to individuals incarcerated pursuant to criminal process.[61] For example, as of February 18, 2022, the Michigan Department of Corrections has administered 11,398 booster shots to individuals in its custody (over a third of the total incarcerated population of 32,273 people).[62]

---

[58] *See* Grace Vitaglione & Sammy Sussman, *Dying in Silence: Families, Advocates, ACLU Question ICE's Accounting of Deaths in Detention*, Investigative Reporting Workshop (Nov. 15, 2021), https://investigativereportingworkshop.org/investigation/dying-in-silence/; *see also* U.S. Gov't Accountability Off., *Immigration Detention: ICE Efforts to Address Covid-19 in Detention Facilities*, 22 (June 2021), https://www.gao.gov/assets/gao-21-414.pdf (noting that 209 ICE detainees required hospitalization as a result of COVID-19 in 2020).

[59] Fed. Bureau of Prisons, Clinical Guidance, *COVID-19 Vaccine Guidance*, Version 14.1, 5–6 (Oct. 13, 2021),
https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v14_0_2021.pdf.

[60] Gov't of the Dist. of Columbia, Dep't of Corr., *Coronavirus Prevention* (Dec. 22, 2021), https://web.archive.org/web/20220205062215/https://doc.dc.gov/page/coronavirus-prevention.

[61] *See, e.g.,* Delaware Dep't of Corr., *Active COVID-19 Cases (Offenders)*, https://doc.delaware.gov/assets/documents/Confirmed_COVID_Cases.pdf (updated Feb. 28, 2022) (noting that "1,593 vaccinated inmates have received a booster"); Missouri Dep't of Corr., *COVID-19 Data*, https://doc.mo.gov/media-center/newsroom/covid-19/data (last visited Feb. 28, 2022) (boosters administered to 4,201 inmates); Minnesota Dep't of Corr., *MN DOC COVID-19 Data Dashboard*, https://mn.gov/doc/about/covid-19-updates/ (last updated Feb. 24, 2022) (34 percent of incarcerated population fully vaccinated and boosted).

[62] Michigan.gov, *COVID-19 Dashboard*, *supra* note 37.

### E.  Class Action Allegations

63.     Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and a class of all other persons similarly situated.

64.     Plaintiffs seek to represent the following proposed class: all individuals who (1) are in or will be in ICE custody, (2) are or become age 55 or older or who have medical conditions that place them at higher risk of serious illness or death from COVID-19, as determined by CDC guidelines, and (3) are or will be eligible for a COVID-19 booster shot, as determined by CDC guidelines, but have not received a booster shot.

65.     Plaintiffs seek to represent the following proposed subclass: all class members with disabilities as defined under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

66.     The proposed class and subclass satisfy the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members if impracticable. According to ICE's own publicly available data, there ICE detained 5,200 immigrants as of late December 2021 whose health issues or age placed them at higher risk of getting severely ill or dying if they contracted COVID-19.[63] Even assuming only a small fraction of this number is eligible to receive a COVID-19 booster shot, the class size would still be in the hundreds or thousands, well over the 40 necessary for certification. For similar reasons, the subclass would be sufficiently numerous to render joinder of all subclass members impracticable because a substantial number of those 5,200 individuals with medical vulnerabilities to COVID-19 would also have qualifying disabilities.

67.     The class and subclass meet the commonality requirements of Rule 23(a)(1). The members of the class and subclass are subject to a common practice: Defendants' failure to ensure

---

[63] Montoya-Galvez, *Coronavirus Infections inside U.S. Immigration Detention Centers Surge by 520% in 2022*, *supra* note 36.

that all eligible medically vulnerable people in ICE detention nationwide can obtain COVID-19 booster shots. By definition, all class members are or will be subject to that practice. The lawsuit raises numerous questions of law common to members of the proposed class, including: whether Defendants' failure to provide booster shots violates their substantive due process rights by posing an unreasonable risk to their health; and, whether Defendants' failure constitutes punishment in violation of class members' substantive due process rights. Members of the proposed subclass share common questions of law, including: whether Defendants have discriminated against members of the subclass; and, whether Defendants have an affirmative obligation to screen and provide accommodations for members of the subclass. The proposed class members also share a common core of facts, including: whether Defendants' failure to provide COVID-19 booster shots poses an unreasonable risk to class members' health; whether class members have a "serious medical need" for a COVID-19 booster shot; and, whether Defendants knew or should have known that their failure to provide COVID-19 boosters possesses an excessive risk to class members' health. Moreover, the proposed subclass members share a common core of facts, including whether subclass members have been excluded from any programs or services that they would otherwise qualify for while in ICE detention.

68. The proposed class meets the typicality requirements of Rule 23(a), because the claims of the representative Plaintiffs are typical of the class. All Plaintiffs are detained by ICE, have medical conditions that place them at heightened risk of serious illness or death from COVID-19, are eligible to receive a COVID-19 booster shot, and have not been provided one by Defendants in accordance with CDC guidance. Plaintiffs Escalante, Hernandez Herrera, and Sorokin have disabilities as defined under 29 U.S.C. § 794.

69. The proposed class and subclass meet the adequacy requirements of Rule 23(a)(4).

The representative Plaintiffs seek the same relief as the other members of the class and subclass—among other things, an order declaring that Defendants' failure to provide boosters is unconstitutional under Due Process Clause of the Fifth Amendment, and an injunction ordering Defendants to make available and provide Plaintiffs and class members an mRNA COVID-19 vaccine booster shot, by directing all ICE detention facilities to identify people in Defendants' custody who are eligible for a booster shot and provide mRNA COVID-19 booster shots upon their eligibility, along with adequate education, pre-vaccination consultation and documentation in accordance with CDC guidance. Plaintiffs Escalante, Hernandez Herrera, and Sorokin also seek an order declaring that Defendants' failure to provide boosters to them and the subclass violates the Section 504 of the Rehabilitation Act of 1973. In defending their own rights, Plaintiffs will defend the rights of all proposed class members fairly and adequately.

70.     The proposed class and subclass are represented by counsel from the American Civil Liberties Union Foundation National Prison Project, Immigrants' Rights Project, and ACLU Foundation of the District of Columbia. Proposed class counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of detained immigrants.

71.     The proposed class and subclass also satisfy Rule 23(b)(2). Defendants have acted (or failed to act) on grounds generally applicable to the class and subclass by failing to adopt a plan or protocol to ensure all eligible individuals in ICE detention nationwide can obtain COVID-19 booster shots. Injunctive and declaratory relief are therefore appropriate with respect to the class and subclass as whole.

## CLAIMS FOR RELIEF

### CLAIM I (All Plaintiffs and the Class)
**Violation of Plaintiffs' Fifth Amendment Right to Substantive Due Process**

72.     Defendants have an affirmative obligation to provide conditions of reasonable health and safety to individuals in their custody, including reasonably adequate medical care.

73.     The Fifth Amendment to the United States Constitution guarantees that civil detainees, including people in immigration detention, may not be subjected to conditions that create an objectively unreasonable risk of serious harm.

74.     Defendants violate Plaintiffs and the class's substantive due process rights under the Fifth Amendment because they knew or should have known that Plaintiffs and class members, medically vulnerable people in ICE detention facilities who have not received a COVID-19 vaccine booster shot in accordance with CDC guidance, face an unreasonable risk to their health and have recklessly disregarded their serious medical need for a COVID-19 vaccine booster shot.

75.     Defendants have also acted with deliberate indifference towards Plaintiffs and the class. Defendants have actual knowledge that COVID-19 vaccine booster shots are integral to protecting Plaintiffs and the class's health and safety, yet have failed to provide COVID-19 vaccine booster shots to them.

76.     Defendants have failed to provide booster shots to Plaintiffs and the class because of Defendants' failure to give instruction or direction regarding boosters to all ICE detention facilities.

77.     Defendants also violate the Fifth Amendment when they subject civil immigrant detainees to conditions of confinement that amount to punishment.

78.     Defendants' failure to provide COVID-19 booster shots to Plaintiffs and the class is not rationally related to its interest in the enforcement of immigration laws. ICE's failure to

29

provide booster shots therefore amounts to unconstitutional punishment.

79.     Plaintiffs and the class have suffered and will suffer injury as a proximate result of Defendants' violation of their right to be free from unreasonable risk of serious harm and from punitive conditions of confinement under the Due Process Clause of the Fifth Amendment.

## CLAIM II (Plaintiffs Escalante, Hernandez Herrera and Sorokin, and Subclass)
### Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794: Failure to Provide Reasonable Accommodation to Persons with Disabilities

80.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder, prohibit discrimination against persons with disabilities by federal agencies, including DHS and ICE, and entities receiving federal financial assistance.

81.     Defendants are federal agencies within the meaning of 28 U.S.C. § 794(a), and the contract facilities at which some Plaintiffs and subclass members are detained are entities receiving federal financial assistance within the meaning of 28 U.S.C. § 794(a).

82.     Plaintiffs Escalante, Hernandez Herrera and Sorokin, and the subclass are individuals with disabilities as defined under Section 504 who are otherwise qualified to participate in programs and activities such as their immigration proceedings. *See* 29 U.S.C. § 705(9); 42 U.S.C. § 12102(1).

83.     Plaintiffs Escalante, Hernandez Herrera and Sorokin, and the subclass have medical and psychological conditions, including HIV, chronic kidney infection, and post-traumatic stress disorder, that substantially impair major life activities including breathing, thinking, concentrating, functional immune systems, and normal bodily functions. 42 U.S.C. §§ 12102(2)(A)–(B).

84.     Plaintiffs Escalante, Hernandez Herrera and Sorokin, and the subclass also have existing conditions that are by regulation presumptive disabilities. *See* 28 C.F.R. §

35.108(d)(2)(iii).

85.     Because of these conditions, Plaintiffs Escalante, Hernandez Herrera and Sorokin, and the subclass are more likely than others to suffer serious illness or death from COVID-19. The CDC has emphasized the importance of COVID-19 vaccines (initial doses and boosters) to individuals in this category of medically vulnerable individuals.

86.     Defendants have engaged in and continue to engage in unlawful discrimination against Plaintiffs Escalante, Hernandez Herrera and Sorokin, and the subclass in violation of the Rehabilitation Act by failing to make reasonable accommodations for them necessary to ensure equal access to their immigration proceedings.

87.     Defendants have also failed to meet their affirmative obligations to screen and provide accommodations for Plaintiffs Escalante, Hernandez Herrera and Sorokin, and the subclass, who are in the custody of Defendants and therefore rely on Defendants to receive any programs or services.

88.     ICE's failure to identify and provide COVID-19 boosters in accordance with CDC guidelines to Plaintiffs Escalante, Hernandez Herrera and Sorokin, and the subclass constitutes discrimination solely by reason of their disability, in violation of Section 504 of the Rehabilitation Act and its implementing regulations.

89.     Section 504 of the Rehabilitation Act is the source of an implied private right of action against federal Executive agencies.

90.     Absent injunctive relief, Plaintiffs Escalante, Hernandez Herrera and Sorokin, and the subclass will continue to experience discrimination by Defendants in their removal proceedings and immigration detention.

**CLAIM IV (Plaintiffs Escalante, Hernandez Herrera and Sorokin, and the Subclass)**

**Violation of Administrative Procedure Act, 5 U.S.C. § 706: Failure to Provide Reasonable Accommodation to Persons with Disabilities as Required under the Rehabilitation Act**

91.     Defendant ICE is a constituent agency within Defendant DHS, an agency whose final actions are subject to judicial review under the APA, 5 U.S.C. §§ 701, 704.

92.     The APA requires courts to "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency actions, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706.

93.     Defendants' actions violate these provisions because they violate the substantive requirements of the Rehabilitation Act for the reasons described in Count III.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

a.  Certify a Class of: all individuals who (1) are in or will be in ICE custody, (2) are or become age 55 or older or who have medical conditions that place them at higher risk of serious illness or death from COVID-19, as determined by CDC guidelines, and (3) are or will be eligible for a COVID-19 booster shot, as determined by CDC guidelines, but have not received a booster shot;

b.  Certify a Subclass of: all class members with disabilities as defined under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794;

c.  Appoint the undersigned as Class Counsel;

d.  Declare Defendants' failure to provide Plaintiffs and class members COVID-19 vaccine booster shots in accordance with CDC guidelines unconstitutional under the

Due Process Clause of the Fifth Amendment;

e.  Declare Defendants' failure to provide Plaintiffs Escalante, Hernandez Herrera and Sorokin, and subclass members COVID-19 vaccine booster shots in accordance with CDC guidelines to violate Section 504 of the Rehabilitation Act, 28 U.S.C. § 794;

f.  Issue injunctive relief ordering Defendants to immediately make available and provide Plaintiffs and class members an mRNA COVID-19 booster shot, by directing all ICE detention facilities to identify people in Defendants' custody who are eligible for a booster shot and provide mRNA COVID-19 booster shots upon their eligibility, along with adequate education, pre-vaccination consultation and documentation in accordance with CDC guidance;

g.  Award Plaintiffs' counsel their costs and reasonable attorneys' fees in this action under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law; and

h.  Grant any other and further relief that this Court may deem fit and proper.

Dated:  March 1, 2022

Respectfully submitted,

/s/ Eunice H. Cho
Eunice H. Cho†
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth St. NW, 7th Floor
Washington, DC 20005
(202) 548-6616
echo@aclu.org

Michael Tan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
Aditi Shah*
NATIONAL PRISON PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600
mtan@aclu.org
ashah@aclu.org

/s/ Arthur B. Spitzer
Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
OF THE DISTRICT OF COLUMBIA
915 Fifteenth St. NW, 2nd Floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

My Khanh Ngo*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0764
mngo@aclu.org

*application for admission *pro hac vice*
forthcoming
†*Pro hac vice* application forthcoming; bar
application pending in DC; practice limited to
federal courts

*Counsel for Plaintiffs*